IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIGUEL RICO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 16−cv−0877−MJR |
| | ) |
| KIM BUTLER, | ) |
| KEITH SANDEN, | ) |
| J. COWAN, | ) |
| J. HECHT, | ) |
| RYAN VALLEROY, | ) |
| JOHN DOE 1, | ) |
| JOHN DOE 2, | ) |
| JOHN DOE 3, | ) |
| JOHN DOE 4, and | ) |
| JOHN DOE 5 | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Miguel Rico, an inmate in Pontiac Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 for events that happened at Menard Correctional Center. Plaintiff seeks declarative relief and damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

>    (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>      (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>      (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Plaintiff filed this Complaint on August 4, 2016.  (Doc. 1).  However, Plaintiff failed to sign the Complaint, and so on September 29, 2016, the Court directed Plaintiff to file a proper signed Complaint.  (Doc. 9).  Plaintiff filed an Amended Complaint with his signature on October 17, 2016.  (Doc. 10).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

Prior to the events at issue here, Plaintiff renounced his gang membership in the Latin Folks by speaking to prison authorities and giving them information about the Latin Folks and the Latin Kings. (Doc. 10, p. 2). As a result of this debriefing, Plaintiff was approved for protective custody. (Doc. 10, p. 2). Plaintiff alleges that gang members had placed a verified contract out on his head. (Doc. 10, p. 3). While in protective custody, Plaintiff was disciplined for a separate incident and sent to general population segregation in the North 2 cell house. (Doc. 10, p. 2-3). Plaintiff alleges that John Doe #4 failed to notify segregation staff that Plaintiff could not be housed with gang members while in segregation. (Doc. 10, p. 2-3).

When Plaintiff arrived at North 2, he was housed with a Latin King member known as Abdelhamed. (Doc. 10, p. 3). On July 19, 2014,[1] Abdelhamed began receiving kites from other gang members directing him to "smash" Plaintiff because Plaintiff had dropped out of the Latin Folks and debriefed. (Doc. 1, p. 4). The notes told Abdelhamed that if he refused to smash Plaintiff, he would be beaten for disobeying an order from the gang chiefs. (Doc. 1, p. 4). Abdelhamed showed Plaintiff the kites and told Plaintiff he had until 10 pm to get out of their shared cell, or he would beat Plaintiff. (Doc. 1, p. 4).

---

[1] The Amended Complaint sometimes lists the date as 7-19-2014 and sometimes lists the date as June 19, 2014. Exhibits attached to the Amended Complaint suggest the relevant date is July 19.

Page **3** of **19**

Plaintiff stopped the cell house gallery officer, Keith Sanden, and told him that he had been placed in a general population cell, and to please check with John Doe #4 and J. Hecht because he was supposed to be separated from all Latin Folks gangs in Menard. Sanden replied, "suck it up, you're not in P.C. now." (Doc. 1, p. 5). Plaintiff then explained that he was a former gang member and had debriefed, and that his cellmate had received kites instructing him to beat Plaintiff. (Doc. 10, p. 5). Abdelhamed himself told Sanden that if Plaintiff was not out of his cell by 10 pm, he would "beat the brakes" off Plaintiff. (Doc. 1, p. 5). Sanden told Plaintiff he would check with the cell house Sergeant, John Doe #1. (Doc. 1, p. 5). Plaintiff begged Sanden not to leave him alone with Abdelhamed or to take him with him, but Sanden told Plaintiff to "stop whining and acting like a punk." (Doc. 10, p. 5).

Sanden continued to make his rounds. (Doc. 10, p. 5). Abdelhamed began punching, slapping, and kicking Plaintiff in the face and body, and Sanden observed the assault. (Doc. 10, p. 5). Plaintiff cried out for help, but Sanden told him to man-up and fight back. (Doc. 10, p. 5). Sanden eventually told Plaintiff that he had discussed the matter with John Doe #1, and that Doe #1 said he would "look into it." (Doc. 10, p. 5). Sanden further told Plaintiff that if Plaintiff wanted out of the cell, he should fight back and then Sanden would write them both an incident report for fighting. (Doc. 10, p. 5). Sanden told Plaintiff that fighting was the only way he would let Plaintiff out of the cell with Abdelhamed. (Doc. 10, p. 5).

Doe #1 stopped by Plaintiff's cell several hours later. (Doc. 10, p. 6). Plaintiff explained the entire situation. (Doc. 10, p. 6). He also told Doe #1 that he wanted to file a grievance on Doe #4, Hecht, and Sanden for their conduct. (Doc. 10, p. 6). At that time, Plaintiff's lips and eye were swollen. (Doc. 10, p. 6). Plaintiff asked Doe #1 to remove him from the cell. (Doc. 10, p. 6). Doe #1 replied that "you tell me you want to write my staff up, and get my officers in trouble, are you crazy, Rico? Deal with it the best you can, I won't help you write grievances or reports against my officers, have a nice day Mr. Rico." (Doc. 10, p. 6). Doe #1 then told Sanden, "let them fight a little then write them both up for fighting. That will cover your ass if he writes grievances." (Doc. 10, p. 6-7).

At approximately 9:30 pm on July 19, 2014, Sanden made his last round, and Plaintiff allowed him to see Plaintiff throwing punches so that Sanden would write an incident report and remove Plaintiff from the cell. (Doc. 10, p. 7). Sanden laughed and told Plaintiff you finally "grew some punk ass balls." (Doc. 10, p. 7). Plaintiff was beaten and bruised. (Doc. 10, p. 7). Plaintiff received an incident report. (Doc. 10, p. 7). He was ultimately disciplined for the fight, even though he explained the situation to the adjustment committee. (Doc. 10, p. 7).

Plaintiff was then moved to another cell in the North 2 cell house. (Doc. 10, p. 7). He had an interview with internal affairs officer John Doe #2 about the incident with Abdelhamed and his interactions with Sanden and Doe #1. (Doc. 10, p. 8). Plaintiff told John Doe #2 that all of the Latin King and Latin Folk members should have been on

Plaintiff's keep safe from ("KSF") list.  (Doc. 10, p. 8).  Doe #2 became angry and told Plaintiff not to tell him how to do his job.  (Doc. 10, p. 8).  He then told Plaintiff that Menard did not have the bed space to create a protective custody segregation unit, and therefore he had no choice but to return Plaintiff to general population segregation.  (Doc. 10, p. 8).

On July 31, 2014, Ryan Valleroy brought another inmate, Garcia, to Plaintiff's cell.  (Doc. 10, p. 9).  Garcia was a member of La Raza, a gang affiliated with the Latin Folks.  (Doc. 10, p. 9).  Valleroy told Plaintiff that Garcia was going to be his new cellmate, and suggested that Garcia could teach Plaintiff some lessons about writing grievances on officers and "how to be a man."  (Doc. 10, p. 9).  Plaintiff then explained to Valleroy about his protective custody status and how he had renounced and debriefed, and thus needed to be separated from La Raza members like Garcia.  (Doc. 10, p. 9).  Valleroy promised to tell the sergeant, John Doe #5.  (Doc. 10, p. 9).  Doe #5 came to Plaintiff's cell, and Plaintiff explained his situation.  (Doc. 10, p. 9).  Doe #5 told Plaintiff that he cannot control the placement officer, and then directed Valleroy to put Garcia into Plaintiff's cell.  (Doc. 10, p. 9).  He also directed Valleroy to write Plaintiff a ticket if the inmates started to fight because that way Plaintiff would not be able to write grievances against the officers.  (Doc. 10, p. 9).  Valleroy then placed Garcia in Plaintiff's cell and told them to "play nice."  (Doc. 10, p. 10).

Garcia immediately received two kites telling him that Plaintiff was a snitch and to "handle" Plaintiff.  (Doc. 10, p. 19).  At approximately 2:30 pm on July 31, 2014,

Garcia punched Plaintiff in the face and upper body. (Doc. 10, p. 10). Plaintiff began to black out and decided that he needed to fight back for his own safety. (Doc. 10, p. 10). Valleroy witnessed the fight. (Doc. 10, p. 10). Doe #5 told Valleroy not to take Plaintiff to health care, and Plaintiff was moved to a different cell and given an incident report. (Doc. 10, p. 10). Plaintiff alleges that John Doe #3 was the lieutenant in charge of North 2 during both incidents. (Doc. 10, p. 16).

Plaintiff then met with Doe #2 and told him the whole story. (Doc. 10, p. 10). Doe #2 told Plaintiff the adjustment committee would not believe him. (Doc. 10, p. 10-11). An officer asked Plaintiff if he wanted to go before the adjustment committee on August 5, 2014, but Plaintiff refused because he reasoned that he would found guilty anyway. (Doc. 10, p. 11).

Plaintiff saw Hecht on his rounds and asked him why segregation staff was not notified of his protective custody status. (Doc. 10, p. 11). Hecht replied that he had, but that it was not his job to follow up with others and make them do their jobs. (Doc. 10, p. 12). Plaintiff alleges that he eventually went on a hunger strike and then made a suicide attempt in order to be transferred out of general population segregation cells. (Doc. 10, p. 14).

J. Cowan also recommended that Plaintiff be denied protective custody in December 2013. (Doc. 10, p. 12, 29). Her recommendation was not accepted, and Plaintiff was approved for protective custody. (Doc. 10, p. 29).

Plaintiff alleges that Kim Butler, the warden of Menard, failed to properly train her employees on prisoner's constitutional rights. (Doc. 10, p. 13).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into five counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claim survives threshold review:

**Count 1 – Defendants Does #1-5, Sanden, Valleroy and Hecht failed to protect Plaintiff from the beatings he received on July 17 and July 31 in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.**

The following claims fail to survive threshold review and will be dismissed:

**Count 2 – Butler failed to train her employees on the constitutional rights of prisoners;**

**Count 3 – Cowan was deliberately indifferent to the serious risk of harm posed by Plaintiff's status as a former gang member when she recommended that his placement in protective custody be denied;**

**Count 4 – Defendants Doe #1 and Valleroy retaliated against Plaintiff for filing grievances by refusing to intervene in his cell assignments in violation of the First Amendment;**

**Count 5 – Plaintiff's due process rights were violated when he was disciplined for fighting after the Defendants Does #1-5, Sanden, and Valleroy refused to intervene when Plaintiff's cellmates assaulted him.**

As to **Count 1**, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate

translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Based on these standards, Plaintiff has stated a claim against Doe #1, Doe #2, Doe #4, Doe #5, Hecht, Sanden, and Valleroy. Plaintiff alleges that he told Doe #1 and Sanden personally that Abdelhamed had received kites instructing him to beat Plaintiff. He further alleges that both Doe #1 and Sanden refused to act, and indeed made comments that appeared to approve of the beating. Further, he alleges that Doe #4, the placement officer, and IA staff persons Doe #2 and Hecht knew that Plaintiff should not be housed with Latin Folks inmates, but ignored that and refused to act to ensure that Plaintiff was not actually housed with those inmates. Finally, Plaintiff has alleged that

Page **9** of **19**

Doe #5 and Valleroy were told that Garcia was a threat to Plaintiff, yet housed him with Plaintiff anyway, and refused to intervene when Garcia started beating Plaintiff within a matter of hours. This is sufficient at this stage to state a claim against these Defendants for failure to protect.

However, Doe #3 must be dismissed from this claim with prejudice. Plaintiff alleges that John Doe #3 was the acting Lieutenant of North 2 during both of the relevant incidents. But he never alleges that he told Doe #3 about the threats against him. He does not allege that Doe #3 participated or directed the other participants in either of the incidents. Plaintiff's sole basis of liability appears to be respondeat superior. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). In order to be held liable, Plaintiff must articulate some facts that show that Doe #3 was personally involved in the incident. In the absence of those facts, Doe #3 must be dismissed with prejudice.

**Count 2** must be dismissed on similar grounds. Plaintiff has not alleged that Butler was personally involved in any of the incidents that he complains about. The allegation against her is that she failed to train her employees on prisoners'

constitutional rights. This is essentially a suit against Butler in her official capacity as Warden of Menard. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same). The only way that Butler can be sued in her official capacity is if Plaintiff sought injunctive relief, which he has not done here. In fact, as Plaintiff has transferred prisons, injunctive relief is not available. And like Doe #3, Plaintiff cannot hold Butler responsible for her employees' actions. *Sanville* 266 F.3d at 740 (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Thus **Count 2** will also be dismissed with prejudice.

Turning now to **Count 3**, Plaintiff alleges that Cowan was deliberately indifferent to the risk of harm when she recommended that Plaintiff's request for protective custody be denied. However, exhibits attached to the Complaint show that Internal Affairs disagreed with Cowan and recommended that Plaintiff be placed in protective custody. The exhibit also shows that the Internal Affairs recommendation was accepted while Cowan's was rejected. Plaintiff's Complaint establishes that he was housed in protective custody prior to the events at issue here, and there is no allegation that

Cowan's 2013 recommendation had any bearing on his housing assignment during the relevant events. On these facts, the Court cannot see how Plaintiff was harmed by Cowan's actions, and Plaintiff has not alleged that he was harmed. Plaintiff must have suffered a harm to have a claim. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) (citing *Doe v. Welborn*, 110 F.3d 520, 523 (7th Cir. 1997)). **Count 3** will therefore be dismissed with prejudice.

As to **Count 4**, this claim also fails. Plaintiff alleges that when he told Doe #1 that he wished to write grievances regarding other correctional officers and be removed from his cell placement, Doe #1 refused to remove him from his cell because of Plaintiff's statements regarding grievances. Likewise, he alleges that Vallernoy told him that Garcia would help Plaintiff with his grievance writing prior to placing Plaintiff in the cell with Garcia. The implication is that Garcia would keep Plaintiff from writing grievances.

To succeed on a First amendment Retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). In the prison context, where an inmate is alleging retaliation, it is not enough to simply state the cause of action. The inmate must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of

the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Id.*

The problem with Plaintiff's claims here is that he does not actually allege that he had previously filed a grievances against either Doe #1 or Valleroy. The threat to file a grievance cannot be the basis for a retaliation claim; Plaintiff must actually have filed the grievance. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("But it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") (emphasis in original). So Plaintiff's comments to the guards cannot be a basis for a retaliation claim. Additionally, Plaintiff has no constitutional right in the grievance process itself. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Plaintiff's claims that he was retaliated against for threatening to use the grievance system must be dismissed with prejudice.

Finally, turning to **Count 5**, Plaintiff alleges that he was deprived of due process. Plaintiff makes this allegation broadly, and the facts articulated by Plaintiff do not

support a due process claim. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

When a plaintiff brings an action under § 1983 for procedural due process violations, he also must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). But "inmates have no liberty interest in avoiding

transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Id.* (citing *Lekas v. Briley*, 405 F.3d 602, 608-09, n. 4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *Crowder v. True*, 74 F.3d 812, 815 (7th Cir. 1996). This is because discretionary, or administrative, segregation is not considered "atypical," but rather an "ordinary incident of prison life" that prisoners should anticipate during their time in prison. *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008).

"[I]f the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh," then some process is needed. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009). The Seventh Circuit has clarified that a court must consider the length of segregated confinement together with all of the conditions of that confinement in determining whether a liberty interest is implicated; it is an error to only consider terms of longer than six months, and conditions should not be considered in isolation from one another. *Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015).

Here Plaintiff has not identified any flaw in the hearing itself that the Constitution would recognize. He has not named any members of the adjustment committee in his Complaint. He also has not pleaded that he was deprived of a liberty interest as a result of the discipline. That dooms his due process claim. Plaintiff appears to be alleging that what actually violated his due process rights was the guards'

actions in refusing to remove him from his cell, thus causing him to fight back and be disciplined. But no case has ever recognized a prisoner's right to a certain cell placement, and in any event, a claim premised on that theory would significantly overlap with Plaintiff's failure to protect claim. The Court thus dismisses **Count 5** with prejudice.

## Pending Motions

Plaintiff's Motion for Service at Government Expense is denied as **MOOT**. (Doc. 3). Plaintiff has been granted leave to proceed IFP, and the Court has found that he has stated a valid claim and will therefore serve the defendants. No further motion is required.

Plaintiff's Motion for appointment of counsel is referred to a magistrate judge for disposition. (Doc. 8).

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** states a claim and survives threshold review. It will proceed against Does #1-2, 4-5, Sanden, Valleroy, and Hecht. John Doe #3 is **DISMISSED with prejudice** from Count 1.

**IT IS HEREBY ORDERED** that **COUNTS 2-5** fail to state a claim upon which relief may be granted, and thus are **DISMISSED** with prejudice. Defendants **Butler and Cowan** are **DISMISSED** from this action with prejudice.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Sanden, Valleroy, and Hecht: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a

Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the

original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: November 14, 2016**

s/ MICHAEL J. REAGAN
**U.S. Chief District Judge**
