UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| MIGUEL RICO, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:16-CV-0877-NJR-GCS |
| KEITH SANDEN and RYAN VALLEROY, | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

SISON, Magistrate Judge:

I. INTRODUCTION AND BACKGROUND

Pending before the Court is Defendant Ryan Valleroy's motion for summary judgment (Doc. 39). This matter has been referred to United States Magistrate Judge Gilbert C. Sison by United States Chief District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b) and Local Rule 72.1(a). Based on the following, the undersigned recommends that the District Court **deny** the motion for summary judgment.

Plaintiff Miguel Rico ("Rico"), an inmate housed at Pinckneyville Correctional Center (Pinckneyville"), brought this present action alleging violations of his constitutional civil rights while incarcerated at Menard Correctional Center ("Menard"). Upon a merits review, the Court found he alleged claims that Defendants

Doe #1, Doe #2, Doe #4, Doe #5, Hecht, Sanden and Valleroy violated his constitutional rights by failing to protect Rico from the beatings he received on July 19, 2014 and on July 31, 2014 in violation of the Eighth Amendment's prohibition on cruel and unusual punishment (Doc. 11, p. 8).[1]

As to those claims that survived review, the Court recited the pertinent facts:

> Prior to the events at issue here, Plaintiff renounced his gang membership in the Latin Folks by speaking to prison authorities and giving them information about the Latin Folks and the Latin Kings. (Doc. 10, p. 2). As a result of this debriefing, Plaintiff was approved for protective custody. (Doc. 10, p. 2). Plaintiff alleges that gang members had placed a verified contract out on his head. (Doc. 10, p. 3). While in protective custody, Plaintiff was disciplined for a separate incident and sent to general population segregation in the North 2 cell house. (Doc. 10, p. 2-3). Plaintiff alleges that John Doe #4 failed to notify segregation staff that Plaintiff could not be housed with gang members while in segregation. (Doc. 10, p. 2-3).
>
> When Plaintiff arrived at North 2, he was housed with a Latin King member known as Abdelhamed. (Doc. 10, p. 3). On July 19, 2014, Abdelhamed began receiving kites from other gang members directing him to "smash" Plaintiff because Plaintiff had dropped out of the Latin Folks and debriefed. (Doc. 1, p. 4). The notes told Abdelhamed that if he refused to smash Plaintiff, he would be beaten for disobeying an order from the gang chiefs. (Doc. 1, p. 4). Abdelhamed showed Plaintiff the kites and told Plaintiff he had until 10 pm to get out of their shared cell, or he would beat Plaintiff. (Doc. 1, p. 4).
>
> Plaintiff stopped the cell house gallery officer, Keith Sanden, and told him that he had been placed in a general population cell, and to please check with John Doe #4 and J. Hecht because he was supposed to be separated from all Latin Folks gangs in Menard. Sanden replied, "suck it up, you're not in P.C. now." (Doc. 1, p. 5). Plaintiff then explained that he was a former gang member and had debriefed, and that his cellmate had

---

[1] On September 4, 2018, the Court acknowledged Rico's stipulation of dismissal as to defendant Jeannette Hecht and noted that judgment will be entered as to Hecht with the entry of the final judgment (Doc. 40). Thereafter, pursuant to Federal Rule of Civil Procedure 42, the Court dismissed defendants John Does #1-5 (Doc. 42).

received kites instructing him to beat Plaintiff. (Doc. 10, p. 5). Abdelhamed himself told Sanden that if Plaintiff was not out of his cell by 10 pm, he would "beat the brakes" off Plaintiff. (Doc. 1, p. 5). Sanden told Plaintiff he would check with the cell house Sergeant, John Doe #1. (Doc. 1, p. 5). Plaintiff begged Sanden not to leave him alone with Abdelhamed or to take him with him, but Sanden told Plaintiff to "stop whining and acting like a punk." (Doc. 10, p. 5).

Sanden continued to make his rounds. (Doc. 10, p. 5). Abdelhamed began punching, slapping, and kicking Plaintiff in the face and body, and Sanden observed the assault. (Doc. 10, p. 5). Plaintiff cried out for help, but Sanden told him to man-up and fight back. (Doc. 10, p. 5). Sanden eventually told Plaintiff that he had discussed the matter with John Doe #1, and that Doe #1 said he would "look into it." (Doc. 10, p. 5). Sanden further told Plaintiff that if Plaintiff wanted out of the cell, he should fight back and then Sanden would write them both an incident report for fighting. (Doc. 10, p. 5). Sanden told Plaintiff that fighting was the only way he would let Plaintiff out of the cell with Abdelhamed. (Doc. 10, p. 5).

Doe #1 stopped by Plaintiff's cell several hours later. (Doc. 10, p. 6). Plaintiff explained the entire situation. (Doc. 10, p. 6). He also told Doe #1 that he wanted to file a grievance on Doe #4, Hecht, and Sanden for their conduct. (Doc. 10, p. 6). At that time, Plaintiff's lips and eye were swollen. (Doc. 10, p. 6). Plaintiff asked Doe #1 to remove him from the cell. (Doc. 10, p. 6). Doe #1 replied that "you tell me you want to write my staff up, and get my officers in trouble, are you crazy, Rico? Deal with it the best you can, I won't help you write grievances or reports against my officers, have a nice day Mr. Rico." (Doc. 10, p. 6). Doe #1 then told Sanden, "let them fight a little then write them both up for fighting. That will cover your ass if he writes grievances." (Doc. 10, p. 6-7).

At approximately 9:30 pm on July 19, 2014, Sanden made his last round, and Plaintiff allowed him to see Plaintiff throwing punches so that Sanden would write an incident report and remove Plaintiff from the cell. (Doc. 10, p. 7). Sanden laughed and told Plaintiff you finally "grew some punk ass balls." (Doc. 10, p. 7). Plaintiff was beaten and bruised. (Doc. 10, p. 7). Plaintiff received an incident report. (Doc. 10, p. 7). He was ultimately disciplined for the fight, even though he explained the situation to the adjustment committee. (Doc. 10, p. 7).

Plaintiff was then moved to another cell in the North 2 cell house. (Doc. 10, p. 7). He had an interview with internal affairs officer John Doe

#2 about the incident with Abdelhamed and his interactions with Sanden and Doe #1. (Doc. 10, p. 8). Plaintiff told John Doe #2 that all of the Latin King and Latin Folk members should have been on Plaintiff's keep safe from ("KSF") list. (Doc. 10, p. 8). Doe #2 became angry and told Plaintiff not to tell him how to do his job. (Doc. 10, p. 8). He then told Plaintiff that Menard did not have the bed space to create a protective custody segregation unit, and therefore he had no choice but to return Plaintiff to general population segregation. (Doc. 10, p. 8).

On July 31, 2014, Ryan Valleroy brought another inmate, Garcia, to Plaintiff's cell. (Doc. 10, p. 9). Garcia was a member of La Raza, a gang affiliated with the Latin Folks. (Doc. 10, p. 9). Valleroy told Plaintiff that Garcia was going to be his new cellmate, and suggested that Garcia could teach Plaintiff some lessons about writing grievances on officers and "how to be a man." (Doc. 10, p. 9). Plaintiff then explained to Valleroy about his protective custody status and how he had renounced and debriefed, and thus needed to be separated from La Raza members like Garcia. (Doc. 10, p. 9). Valleroy promised to tell the sergeant, John Doe #5. (Doc. 10, p. 9). Doe #5 came to Plaintiff's cell, and Plaintiff explained his situation. (Doc. 10, p. 9). Doe #5 told Plaintiff that he cannot control the placement officer, and then directed Valleroy to put Garcia into Plaintiff's cell. (Doc. 10, p. 9). He also directed Valleroy to write Plaintiff a ticket if the inmates started to fight because that way Plaintiff would not be able to write grievances against the officers. (Doc. 10, p. 9). Valleroy then placed Garcia in Plaintiff's cell and told them to "play nice." (Doc. 10, p. 10).

Garcia immediately received two kites telling him that Plaintiff was a snitch and to "handle" Plaintiff. (Doc. 10, p. 19). At approximately 2:30 pm on July 31, 2014 Garcia punched Plaintiff in the face and upper body. (Doc. 10, p. 10). Plaintiff began to black out and decided that he needed to fight back for his own safety. (Doc. 10, p. 10). Valleroy witnessed the fight. (Doc. 10, p. 10). Doe #5 told Valleroy not to take Plaintiff to health care, and Plaintiff was moved to a different cell and given an incident report. (Doc. 10, p. 10). Plaintiff alleges that John Doe #3 was the lieutenant in charge of North 2 during both incidents. (Doc. 10, p. 16).

Plaintiff then met with Doe #2 and told him the whole story. (Doc. 10, p. 10). Doe #2 told Plaintiff the adjustment committee would not believe him. (Doc. 10, p. 10-11). An officer asked Plaintiff if he wanted to go before the adjustment committee on August 5, 2014, but Plaintiff refused because he reasoned that he would be found guilty anyway. (Doc. 10, p. 11).

> Plaintiff saw Hecht on his rounds and asked him why segregation staff was not notified of his protective custody status. (Doc. 10, p. 11). Hecht replied that he had, but that it was not his job to follow up with others and make them do their jobs. (Doc. 10, p. 12). Plaintiff alleges that he eventually went on a hunger strike and then made a suicide attempt in order to be transferred out of general population segregation cells. (Doc. 10, p. 14).

(Doc. 11, pgs. 3-7) (footnote omitted).

Valleroy filed the motion for summary judgment arguing that Rico's version of the events is insufficient for liability to attach, thus, he is entitled to judgment as a matter of law (Doc. 39). Valleroy also argues that he is entitled to qualified immunity. Rico opposes the motion for summary judgment (Doc. 43). The undersigned turns to address the merits.

## II.  FACTS

Miguel Rico was a member of the gang Sureños (under the umbrella of the Latin Folks gang) prior to entering prison. Rico quit the gang before he was incarcerated. Once in prison, Rico refused to participate in gang activities and provided information on several gang members to prison officials. In late 2013, Rico was warned that the Latin Folks were enforcing the rules and would require him to participate in gang activities. Rico was approached by gang members in December 2013, and the gang members demanded information from him. As a result, Rico was concerned for his safety with respect to inmate-members of the Latin Folks and other affiliated gangs, and he sought protective custody.

In June 2014, Rico was issued a disciplinary ticket and received six months of

segregation. On July 19, 2014, inmate Abdelhamed (known as Egypt), a member of the Latin Kings, was celled with Rico. That day, Abdelhamed got notes ("kites") from other prisoners instructing Abdelhamed that he had until 10:00 p.m. to attack Rico. Rico informed Defendant Sanden of the threat and Abdelhamed confirmed the same to Defendant Sanden. Thereafter, Abdelhamed attacked Rico. Rico was removed from the cell he shared with Abdelhamed and moved to another cell. Rico spoke with Internal Affairs the day after Abdelhamed attacked him.

On or around the end of July 2014, prison officials tried to place an inmate that goes by the name of Tone in the same cell as Rico. (Rico's deposition, p. 70). Rico told prison staff that he could not be placed with Tone because Tone's gang affiliation was with the Maniacs. *Id.* Tone was not placed with Rico but placed in the cell next to him. *Id.*

Shortly thereafter, Valleroy tried to put inmate Garcia, who goes by the name of Wilo, in Rico's cell. (Rico's deposition, pgs. 70-74). Garcia was affiliated with the Raza gang. Garcia was a member of the Latin Counts and a Count within the organization. *Id.* Rico tried to explain to Valleroy that he could not be in a cell with Garcia because of safety concerns. *Id.* at p. 74. Rico also told Valleroy about the issues with inmate Tone, that his life was in danger from the Latin Folks and that Garcia was affiliated with Latin Folks. *Id.* Valleroy asked Garcia if he knew Rico and Garcia said no. *Id.* at p. 75. Valleroy also asked Garcia if he had a problem with Rico and Garcia said no. *Id.* Subsequently, Valleroy gave Rico the order for handcuffing and

Rico told him no. *Id.* Valleroy called the sergeant on the walkie-talkie and the sergeant came over to Rico.

Rico explained the situation to the sergeant along with other officials that were present. (Rico's deposition, p. 76). Rico asked to speak to Internal Affairs, but his request was refused. *Id.* at p. 77. The sergeant gave the order for Rico to be handcuffed or sprayed with mace. *Id.* Thus, Rico was handcuffed and Valleroy placed Garcia in the cell with Rico. Valleroy told Rico and Garcia if he saw them fighting, he would write them both up. *Id.*

After Garcia was placed in the cell with Rico, Garcia began receiving notes similar to those received by Abdelhamed. Garcia told Rico "man, you have to get out of here." (Rico's deposition, p. 78). Next, Rico told an officer during rounds that he needed to speak with Valleroy about being removed from the cell. Rico testified that Valleroy told him that "he couldn't do anything else for me." *Id.*

Later that day, Garcia attacked Rico in the cell. (Rico's deposition, p. 79). During the fight, Valleroy passed by the cell and broke up the fight. Valleroy called the fight in over the walkie-talkie and issued Rico a disciplinary ticket for assault. *Id.* The July 31, 2014 disciplinary report reads as follows:

> Offense: 102 Assaulting Any Person
> Observation: On the above date and approximate time while doing a routine gallery check of North 2 Eight gallery this R/O walked by cell 8-50 and noticed inmate Rico (M34394) striking inmate Garcia (M36774) with closed fists. This R/O notified his Sgt Drake. Inmates were given direct order then proceeded to stop. Both inmates were cuffed seen by med tech. Inmate Rico was then placed in N2 5-06. Chain of command notified…"

(Doc. 39-2).

### III. SUMMARY JUDGMENT STANDARD

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. A "material fact" is one identified by the substantive law as affecting the outcome of the suit. A "genuine issue" exists with respect to any such material fact . . . when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do. In determining whether a genuine issue of material fact exists, we view the record in the light most favorable to the nonmoving party.

*Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014)(citations omitted).

### IV. ANALYSIS

An Eighth Amendment failure to protect claim arises when a plaintiff is incarcerated under conditions posing a substantial risk of serious harm, and the defendant acts with deliberate indifference to the prisoner's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). "[A] generalized risk of violence is not enough, for prisons are inherently dangerous places." *Wilson v. Ryker*, No. 11-2086, 451 Fed. Appx. 588, 589 (7th Cir. Dec. 12, 2011)(internal citations and quotations omitted). Instead, a plaintiff

must allege "a tangible threat to his safety or well-being" and "a substantial risk of future harm." *Id*. Prison officials must be aware of a specific, impending, and substantial threat to Plaintiff's safety. *See Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "A substantial risk of serious harm is one in which the risk is so great that it is almost certain to materialize if nothing is done." *Wilson*, 451 Fed. Appx. at 589.

Valleroy contends that he did not disregard Rico's safety concerns. Valleroy claims that prior to placing Garcia in the cell with Rico, he asked Garcia the following questions to which Garcia responded no: (1) if he knew Rico and (2) whether he had any problems with Rico. Further, Valleroy contends that his supervising sergeant directed him to place Garcia in the cell with Rico.

However, as Rico counters, there are questions of facts as to whether Valleroy was aware of the specific threat that Garcia posed to Rico *before* and *after* Valleroy placed Garcia in the cell with him. The record includes evidence that indicates Valleroy was aware of Rico's previous assault by inmate Abdelhamed under similar circumstances, which occurred on July 14, 2014. The record also includes evidence that Rico told Valleroy that he needed protection from inmate-gang members affiliated with the Latin Folks and that Rico told Valleroy his life and safety would be in danger if he was placed with Garcia. Further, there is evidence that Valleroy had knowledge of the specific threat immediately after placing Garcia in the cell as he told the inmates he would write them up if he saw them fighting. Additionally, there is evidence that Rico told Valleroy that Garcia received notes/kites *after* being

placed in the cell with Rico, that Valleroy told Rico there was nothing he could do to help him and that Valleroy did nothing to prevent the altercation between Rico and Garcia. Viewing these facts in the light most favorable to Rico, the undersigned finds that there are questions of material fact that preclude summary judgment.

Lastly, the undersigned finds that Valleroy is not entitled to qualified immunity. In 2014, it was clearly established that the risk of an attack by a cellmate constitutes a risk of serious harm. *See Farmer*, 511 U.S. at 833 ("[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."). *See also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006); *Pope*, 86 F.3d at 92. Thus, Valleroy is not entitled to qualified immunity on Rico's Eighth Amendment failure to protect claim.

## IV. RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** the motion for summary judgment (Doc. 39). If the Court accepts the undersigned's recommendation, the claims against Keith Sanden and Ryan Valleroy in Count 1 for failure to protect will remain in the case.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District

Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Objections to the Report are due on or before **September 11, 2019**.

**IT IS SO ORDERDED.**

**DATED: August 28, 2019.**

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2019.08.28 09:36:38 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**